UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHRISTINA MILLER,

      Plaintiff,                          Case No. 3:19-CV-167

vs.

COMMISSIONER OF SOCIAL SECURITY,     District Judge Walter H. Rice
                                          Magistrate Judge Michael J. Newman
      Defendant.

_____

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING AT ISSUE BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR FURTHER PROCEEDINGS; AND (3) THIS CASE BE TERMINATED ON THE COURT'S DOCKET**

_____

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court on Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 11), Plaintiff's reply (doc. 14), the administrative record (doc. 5),[2] and the record as a whole.

**I.**

**A.**     **Procedural History**

Plaintiff filed for DIB alleging a disability onset date of March 2, 2013. PageID 1231. Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*,

_____

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

diabetes mellitus, hidradenitis suppurativa,[3] hypertension, obesity, a depressive disorder, and an anxiety disorder.  PageID 1234.

After an initial denial of her application, Plaintiff received a hearing before ALJ Gregory G. Kenyon on September 29, 2016.  PageID 90-137.  The ALJ issued a written decision on January 5, 2017 finding Plaintiff not disabled.  PageID 70-83.  On appeal, based on the joint stipulation of Plaintiff and the Commissioner, ALJ Kenyon's opinion was remanded by this Court on December 1, 2017 for further proceedings.  *Miller v. Comm'r of Soc. Sec.*, No. 3:17-CV-167, at doc. 7 (S.D. Ohio Dec. 1, 2017).

On remand, Plaintiff received another hearing before ALJ Kenyon on November 6, 2018.  PageID 1254-1282.  The ALJ issued a written decision on February 5, 2019 finding Plaintiff not disabled.  PageID 1231-1245.  Specifically, the ALJ found at Step Five that, based upon Plaintiff's residual functional capacity ("RFC") to perform a reduced range of medium work,[4] "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]"  PageID 1236-1245.

Thereafter, as no exceptions were filed and the Appeals Council did not otherwise assume jurisdiction, ALJ Kenyon's non-disability finding became the final administrative decision of the

---

[3] "Hidradenitis suppurativa ... is [a] rare, long-term skin condition that features small, painful lumps under the skin. They typically develop where the skin rubs together, such as the armpits, the groin, between the buttocks and under the breasts. The lumps may break open and smell or cause tunnels under the skin." *Nellum v. Comm'r of Soc. Sec. Admin.*, No. 3:17-CV-390, 2019 WL 1529199, at *1 (S.D. Ohio Apr. 9, 2019), *report and recommendation adopted*, No. 3:17-CV-390, 2019 WL 1790804 (S.D. Ohio Apr. 24, 2019).

[4] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). An individual who can perform medium work is presumed also able to perform light and sedentary work. *Id.* Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or…sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

Commissioner.  20 C.F.R. § 404.984(d); *Bray v. Chater*, No. 96-5226, 1996 WL 549773, at *1 (6th Cir. Sept. 26, 1996).  Plaintiff then timely filed this appeal.  *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007).

### B.  Evidence of Record

The evidence of record is adequately summarized in the ALJ's decision (PageID 1231-45), Plaintiff's Statement of Errors (PageID 1836-55), the Commissioner's memorandum in opposition (PageID 1861-78), and Plaintiff's reply (PageID 1882-92).  The undersigned incorporates all of the foregoing and sets forth the facts relevant to this appeal herein.

## II.

### A.  Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference."  *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?;

2. Does the claimant suffer from one or more severe impairments?;

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?;

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?; and

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred in: (1) evaluating the treating source opinions of record (specifically, Cheng Pan, M.D.; and Guillermo Trevino, M.D.); (2) determining her RFC; (3) making unreasonable and unsupported findings regarding the evidence; and (4) finding her "presentation and demeanor" at the administrative hearing was evidence of non-disability.  PageID 1843-55.  Finding error in the ALJ's weighing of the opinion of Plaintiff's treating psychiatrist Dr. Pan, the Court does not address her other alleged errors and, instead, directs that these issues be addressed by the ALJ on remand.

Until March 27, 2017, "the Commissioner's regulations [that apply to this appeal] establish[ed] a hierarchy of acceptable medical source opinions[.]"  *Snell v. Comm'r of Soc. Sec.*, No. 3:12-CV-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers.  *Id.*  Under the regulations then in effect, the opinions of treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record."  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013).  Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as

a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[5]

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9.

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id.* Put simply, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). In the absence of a controlling treating source opinion, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Here, treating psychiatrist Dr. Pan opined, on January 11, 2016,[6] that Plaintiff has a number of "extreme" and "marked"[7] limitations in her ability to, *inter alia*, remember locations and work-like procedures; maintain attention and concentration for extended periods; perform activities

---

[5]  In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-CV-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

[6]  Dr. Pan previously opined, on November 10, 2014, that Plaintiff experienced a number of similar limitations. PageID 727-29.

[7]  Whereas "mild" and "moderate" functional limitations are generally considered "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991).

within a schedule; maintain regular attendance; be punctual within customary tolerances; and sustain an ordinary routine without special supervision.   PageID 1055-56.   Dr. Pan concluded that Plaintiff would be absent three times a month or more as a result of her mental impairments or treatment for the same (a finding suggestive of disability).  PageID 1055.

Despite Dr. Pan's lengthy treatment relationship with Plaintiff (spanning approximately 5 years prior to her date last insured, *i.e.*, December 31, 2015), the ALJ afforded his opinion "little weight."  PageID 727, 1233, 1241.  In doing so, the ALJ failed to specifically decline to afford his opinion controlling weight and failed to analyze any of the controlling weight factors.  *Id*.  Instead, in affording Dr. Pan's opinion "little weight," the ALJ's only two critiques are: (1) his "progress notes do not support [his] opinion;" and (2) "he appears to simply accept [Plaintiff's] subjective complaints with no inquiry as to whether they are objectively supported."  PageID 1241.

First, as held by the Sixth Circuit, "inconsistencies between the doctor's opinions and portions of [his or] her reports" is a factor "properly applied *only after* the ALJ has determined that a treating-source opinion will not be given controlling weight."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (emphasis added).  Having failed to specifically analyze and provide reasons as to why Dr. Pan's treating opinion is not entitled to controlling weight, the ALJ committed reversible error by depriving "the Court of the opportunity to meaningfully review whether [the ALJ] undertook the 'two-step inquiry' required when analyzing treating source opinions."  *Marks v. Colvin*, 201 F. Supp. 3d 870, 882 (S.D. Ohio 2016).  *See also* note 5 *supra; Hatton v. Comm'r of Soc. Sec.*, No. 3:18-CV-008, 2018 WL 4766963, at *4 (S.D. Ohio Oct. 3, 2018), *report and recommendation adopted*, No. 3:18-CV-008, 2018 WL 5084758 (S.D. Ohio Oct. 18, 2018); *Reese v. Comm'r of Soc. Sec.,* No. 3:17-CV-283, 2018 WL 2381896, at *3 (S.D. Ohio May 25, 2018).  Reversal is warranted on this basis alone.

Next, the ALJ disregards Dr. Pan's opinion as being unsupported by objective evidence. *See* PageID 1241.  In so doing, "the ALJ appears to neglect to take into account the very nature of mental health issues."  *Newberry v. Colvin*, No. 3:14-CV-80, 2015 WL 4365954, at *6 (S.D. Ohio July 16, 2015), *report and recommendation adopted*, No. 3:14-CV-80, 2015 WL 4639754 (S.D. Ohio Aug. 4, 2015).  As the Sixth Circuit has explained:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices ... in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Brown*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873–74 (D.C. Cir. 1987) (other citation omitted)).  "In other words, many times in the realm of mental health impairments, clinical observations made by mental health professionals serve as the only objective evidence available to substantiate the existence, persistence, and limiting effects of such impairments."  *Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 723 (S.D. Ohio 2019).  Plaintiff's lengthy treatment records (and accompanying clinical findings) evidence that she was dysphoric, anxious, labile (*i.e.,* emotionally unstable), and depressed; demonstrated a preoccupied, sluggish, and/or withdrawn demeanor; and had impairments in her attention, concentration, and memory.  *See* PageID 733, 810, 822, 826, 842; 850; 1112, 1124, 1138, 1148, 1157, 1177, 1187.  Thus, insofar as the ALJ suggests the record is devoid of any objective evidence substantiating Plaintiff's allegations, such conclusion is unsupported by substantial evidence.

8

Further, the ALJ criticizes Dr. Pan's opinion as lacking evidence of "active hallucinations during any of the office visits." *See* PageID 1241-42. To the extent the ALJ discredits Dr. Pan's opinion because his medical opinion is based solely on Plaintiff's own reports of "acute psychotic symptoms," *i.e.*, hallucinations, such a criticism is not a sufficient basis for the ALJ's rejection of his medical opinion. *See id*.; *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 526 (6th Cir. 2014) (finding a treating physician's opinion that was based "solely on Plaintiff's own reports of hallucinations…likely would not have provided a sufficient basis for the ALJ's rejection of his medical opinion"). Additionally, it is unclear how the ALJ's focus on this symptom, to the exclusion of Dr. Pan's many other clinical observations over the course of his lengthy treatment relationship with Plaintiff, discredits his opinion.

In light of all the foregoing, the undersigned finds the ALJ's non-disability finding unsupported by substantial evidence and meriting reversal.

## IV.

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to reverse and remand the matter for rehearing or to reverse and order an award of benefits. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987). In this instance, evidence of disability is not overwhelming, and a remand for further proceedings is necessary.

## V.

**IT IS THEREFORE RECOMMENDED THAT:** (1) the Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**; (2) this matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for further proceedings; and (3) this case be **TERMINATED** on the Court's docket.


Date:  April 20, 2020                    s/Michael J. Newman
                                         Michael J. Newman
                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).